DETERMINED IN THE

# FIFTH DEPARTMENT

AT

## GENERAL TERM,

### June, 1894.*

---

EDWIN G. S. MILLER, Appellant, v. SOLOMON EHEINZWEIG and Others, Respondents.

*"Incumbrances" — when "taxes" are not included therein — construction of a contract — when extrinsic evidence may be given to aid the construction thereof.*

While, in a general sense, the word "incumbrances" will be held to include a tax, it is not generally used in that sense in conveyances, in which, if it is desired to provide against the lien of taxes, assessments and incumbrances, all of such words are used.

It is the duty of a court to construe a contract in such a way as to give force and validity to all its parts and the language used therein, if it be possible.

When a contract is ambiguous and uncertain extrinsic evidence is admissible to aid in the construction thereof, and the facts surrounding the making of such contract and the practical construction given thereto by the acts of the parties in carrying it out, are important aids in construing the same.

(HAIGHT, J., dissenting.)

APPEAL by the plaintiff, Edwin G. S. Miller, from an interlocutory judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Erie on the 2d day of March, 1893, upon the decision of the court rendered after a trial at the Erie Special Term.

*Frank C. Ferguson,* for the appellant.

*Tracy C. Becker,* for the respondents.

---

* The other cases of this term will be found in volume 78 Hun.— [REP.

LEWIS, J.:

This action was brought to foreclose a land contract made by one Baptist Kahabka, as the party of the first part, and the defendants, as parties of the second part.

The defendants had organized themselves into an unincorporated company or syndicate called the " Arthur Avenue Land Company," for the purpose of purchasing the land described in the contract, and subdividing it into lots, and placing them upon the market for sale. There were about ten acres of it, and it was located in the city of Buffalo. The vendor, Kahabka, transferred his interest in the contract to the plaintiff. The sole question litigated upon the trial was as to which of the two parties was obligated by the contract to pay the paving tax, amounting to $1,542.39, which was a lien upon the land at the time of the execution and delivery of the contract.

The trial court held that it was incumbent upon the plaintiff to pay the tax, and from an interlocutory judgment entered upon that decision this appeal was taken.

The contract bears date January .5, 1887. The party of the first part agreed to sell to the parties of the second part the land described in the contract, "for the sum of $21,252.00, which said parties of the second part hereby agree to pay as follows : Not less than $1,000 on or before the tenth day of January, 1887, and balance in such weekly sums as shall be derived by said second parties from the sale of lots or parcels of said premises." The parties of the second part agreed to use their best endeavors to sell lots and parcels of the premises, and pay to the credit of the party of the first part all sums received from such sale over and above running expenses, and they guaranteed that the payments should not be less than $300 every three months. " Of the quarterly payments specified in this contract at least 75 per cent shall be applied on the incumbrances now resting on said premises until the same are fully paid, and the treasurer of the purchasers is hereby authorized to pay said 75 per cent upon such incumbrances when ever said 75 per cent shall amount to the sum of $300 and upwards. The party of the first part further agrees to give deeds of subdivision lots of said premises free and clear of all liens and incumbrances now resting thereon or placed thereon by the party of the first part when-

ever said lots shall be sold, and the purchase price applied in full on this contract, provided that the prices so paid and applied shall not be less than $12.00 per foot front on Walden avenue, and $10.00 per foot front on Kahabka avenue, and $8.00 per foot front on Doat street." Said second parties agreed to pay interest semi-annually on portions of the principal sum remaining from time to time unpaid. " Said parties of the second part also agree to pay all taxes and assessments which shall be levied or assessed on said premises after the date hereof, but said party of the first part hereby guarantees that all taxes and assessments heretofore levied or assessed are fully paid, except the paving tax on Walden avenue." Then follows a provision to the effect that whenever the sum of $5,000 shall be paid upon the contract the vendor will, at the option of the parties of the second part, give a deed of such portions of the premises not theretofore deeded and take back a purchase-money mortgage, which mortgage shall contain the same covenants and conditions as are contained in the contract. The vendor agrees to give releases of subdivision lots of said premises from the operation of such mortgage upon the same conditions as are provided in the contract for the giving of deeds. The only remaining part of the contract material to the question before us is as follows : " And said party of the first part, upon receiving payment at the time and in the manner above mentioned, shall, at his own proper cost, execute and deliver to said second parties or to their assigns a warranty deed of said premises for the portion thereof not theretofore deeded, at the request of said second parties, free and clear of all liens and incumbrances, except taxes and assessments levied or assessed thereon after this date, or incumbrances placed thereon by said second parties, except the aforesaid paving tax on Walden avenue."

The provisions of the contract upon which the defendants rely to sustain their contentions are : *First*, that the consideration they were to pay for the property is stated in the contract to be $21,252. They insist that if they are held to be liable to pay the tax, the amount of the tax will be added to the purchase price, and they further insist that the tax was an incumbrance upon the land within the meaning of the contract, and they call attention to the provision permitting them to apply seventy-five per cent of their payments upon the incumbrances, and further to the clause providing for the

giving of deeds of subdivision lots free from all liens and incum-
brances upon payment of the prices per foot mentioned, and also
the clause in the contract providing for the vendor giving a deed of
the property upon payment of $5,000, and taking back a mortgage
for the unpaid purchase price, the mortgage to contain like condi-
tions as to releases as are provided for in the contract. Were it not
for other provisions in the contract it would be difficult to resist the
defendants' contention. The strength of the defendants' case must,
we think, mainly rest upon the clause mentioning the consideration
to be $21,252. If, however, upon a reading of the whole contract,
it shall appear that the sale was made subject to the paving tax, the
importance of this provision disappears. If, upon reading the entire
contract, it fairly appears that the land was sold subject to the pav-
ing tax, then there is no ground for the defendants' contention.
While, in a general sense, the word "incumbrances" would be held
to include a tax, it is not generally used in that sense by scriveners
in drawing contracts. When it is desired to provide against the lien
of taxes, assessments and incumbrances all of those words are used,
and the person who drew this contract thought it was necessary to
mention them all. What the incumbrances were the contract fails
to state, but we learn from the evidence that there were two mort-
gages which were liens upon the property; one was held by a Mr.
Werner and was for $12,000; the other was owned by the plaintiff
and was for $5,000. Whether the clause of the contract providing
for the deeding of subdivision lots free and clear of all liens and
incumbrances was intended to cover the tax in question depends, as
before stated, upon the intention of the parties, as expressed by the
contract. If the sale was in fact subject to the tax this clause
amounts to nothing. It does not occur to us that the clause giving
the defendants the option to apply seventy-five per cent upon the
incumbrances strengthens the defendants' contention. That clause
manifestly was inserted for the protection of the defendants. It
provided that they might personally make the application of the
seventy-five per cent upon the incumbrances, and not trust to the
responsibility or good faith of the vendor to make such application.
It appears from the evidence that the paving tax could have been
paid in five equal annual installments if the installments had been
paid when they became due, but that was not done, and hence the

entire tax became due at once; and while the holders of the mortgages might be willing to accept payments of principal at any time, the paving tax could not be thus paid, and if it were not paid within the time provided by the charter the land was liable to be sold for the tax. That being the situation of the tax, it is not probable that the parties understood that this tax was included in the clause relating to the payments upon incumbrances. We do not see that the clause as to the deeding of the premises upon the vendees paying the sum of $5,000 is of any particular importance in the case, for, as we have seen, the mortgage given for the unpaid purchase price was to contain the same covenants and conditions as were provided by the contract. If these provisions of the contract upon which the defendants rely were all there are bearing upon the question, we would probably not hesitate to affirm the judgment; but they are not. There are other portions of the contract having a material bearing upon this question, and it is our duty to construe the contract in such a way as to give force and validity to all of its parts and the language used, if that is possible. (Pars. on Cont. 622.)

This paving tax is referred to but twice in the contract, and we have heretofore quoted the provisions in which it is mentioned. In neither instance was it necessary to refer to it if the construction contended for by the respondents is the correct one. It first appears in the clause where the vendor guarantees that all the taxes and assessments levied or assessed upon the property at the date of the contract are fully paid, " except the paving tax on Walden avenue." If this tax was to be paid by the vendor there does not seem to have been any necessity or propriety in mentioning the exception. Again, upon the defendants' theory of the case it is impossible to give full force and effect to the last clause of the contract heretofore quoted, providing for the vendor giving a deed of the premises upon receiving full payment of the purchase price free and clear of all liens and incumbrances " except taxes and assessments levied or assessed thereon after this date, or incumbrances placed thereon by said second parties, except the aforesaid paving tax on Walden avenue." Unless the words last quoted are meaningless, they must be construed, we think, in favor of the plaintiff's contention. The vendor would have fully complied with the requirements of the contract on his part, so far as the form of his deed is concerned, if he had ten-

dered to the vendees a warranty deed containing a covenant against all liens and incumbrances upon the property at the date of the contract, " except the aforesaid paving tax on Walden avenue." The scrivener who drew the contract failed to express as clearly as he should have done the obligations of the respective parties touching this tax. The contract is so worded as to leave its construction in some doubt. It was so considered upon the trial, for both parties, without objection, introduced extrinsic evidence as to what was said and done while the contract was being prepared, and what occurred subsequently, with a view of showing the intention of the parties when they made the contract. Its meaning is perhaps so ambiguous and uncertain as to have made the introduction of extrinsic testimony proper. The facts surrounding the making of a contract and the practical construction given thereto by the acts of the parties in carrying it out are frequently important aids in construing it. A careful examination of the extrinsic facts in this case has strengthened our views of the true meaning of the contract. As before stated, there were two mortgages which were liens upon the land at the time of the sale, and there was in addition this paving tax. The defendants, after obtaining the contract, commenced the sale of lots, making payments from time to time to the vendor, and applying upon the mortgages seventy-five per cent of their payments. They sold a portion of the land fronting upon the paved street, with an understanding with the purchaser that he should take it subject to its proportion of this paving tax. They fail to explain why they were requiring their vendee to assume a portion of a tax they were under no obligations to pay. Kahabka testified, and in this respect his evidence was not contradicted, that he applied to the defendants from time to time to pay this tax ; that they replied that they had not the money to pay it, and would be obliged to make an assessment upon their stockholders to raise the money. He says that he thereafter paid the tax, and that the defendants reimbursed him for the whole amount that he paid. The secretary, Chilcott, one of the defendants, testified as follows : " Our company has paid that tax. We gave Mr. Kahabka money to pay part of it, and part of it I paid direct." The defendants in making their payments to Kahabka while he owned the contract, and to the plaintiff after he became the owner thereof, paid interest upon the balance due without taking

any account of their having paid the tax, paying interest from their standpoint upon the amount of this tax, $1,542.39, which they were under no obligation to pay. Two years after the date of the contract, and after a number of payments had been made thereon to Kahabka, he applied to the plaintiff to purchase the contract, and the plaintiff required him to obtain a statement from the defendants of the amount that was unpaid thereon, and Kahabka applied to the secretary of the company, Mr. Chilcott, for such a statement. Chilcott furnished it and Kahabka used it with the plaintiff in making the sale. The plaintiff testified that he relied upon it as showing the true amount due from the defendants upon the contract. It showed the amount due upon the contract over and above the amount unpaid upon the two mortgages to be $3,736. If the amount of the tax were charged as a payment upon the contract the amount due was only $2,293.61. The account, as appears from the evidence, was copied from the defendants' books, and contained some thirty odd items on both the credit and debit side of the account.

The first item upon the account is: "To purchase
    price of land" .................................. $21,252 00
The next entry is: "To expense" .................. 4,547 52
 
                                            $25,799 52

The latter sum is made up as appears from the statement of eight different items, of which this paving tax of $1,542.39 is the first, and then appear the following:

"To amount paid on sidewalk. ..................... $284 92
    do.           water pipes.................... 230 15
    do.           surveying..................... 40 00
    do.           interest...................... 1,640 15
    do.           city and county tax............ 198 24
    do.           commissions, secretary's salary,
                        etc......................... 553 01
                      cash on hand................. 58 66"

These sums added make the amount of the expense item mentioned $4,547.52. From this it appears that the paving tax was included with other items which legitimately belong to the expense of carrying the property. Immediately over these expense items in

the statement is the entry : " To amount paid on contract, $4,300."
This is significant evidence that the secretary understood that the
defendants were obligated to pay the tax.   This statement, as we
have seen, was taken from the books of the defendants, and there is
an absence of any evidence from them showing that they were
ignorant of the contents of their books.   The defendants were all
interested in this enterprise, and we must assume that they were
familiar with the condition of the account and of what their books
showed as to the amount of their indebtedness, and it would seem
to follow that they must have understood that this paving tax was
a part of their expense in connection with the purchase of the land.
John F. Smith, one of the defendants, testified that he knew that
the account was given to Miller, and that he thereafter as treasurer
from time to time paid the plaintiff the interest on the balance due
without deducting therefrom the paving tax, and that he had made
like payments to Kahabka before he assigned the contract to the
plaintiff.   There were several witnesses called who testified as to
what occurred at the time of the drawing of the contract.   The
attorney who prepared it testified that the talk on the part of all
the parties was that the company was to pay this Walden avenue
paving tax.   He says : " There was no controversy.   *   *   *   It
was thoroughly understood as much as any proposition could be
possibly understood,   *   *   *   and that talk was participated in by
everybody connected with it."   The testimony of Kahabka and Mr.
Floss, who is one of the defendants, corroborated the testimony of
the attorney.   Several of the defendants were called as witnesses
and testified that they were present at the time the contract was
being prepared ; that the question came up as to who was to pay the
tax, and that the attorney who was preparing the contract replied
that Kahabka was to pay it and would pay it.   In view of the con-
duct of the defendants in relation to the tax, as heretofore stated,
their recollection as to the conversation at the time of the making
of the contract is manifestly incorrect.   With a view of breaking
the force of the very significant fact that the defendants voluntarily
continued to pay interest to the holder of the contract upon an
amount without deducting the tax, the defendant's counsel became
a witness on the trial, and, under objection from the plaintiff's
counsel as to its competency, testified that he was consulted by the

defendants as to the sub-contract above referred to, which they had made with a purchaser for a portion of the property fronting upon the paved street, with the view of ascertaining whether they could compel their vendee to pay his proportion of this paving tax, it not having been provided in the written contract that the vendee should pay it. The counsel testified that after having advised them in reference to that question they asked his opinion as to which party was obliged to pay the tax in question, and he says he was informed that the defendants had already paid the tax to Mr. Kahabka. He testified that he advised the defendants that the construction of the contract was somewhat doubtful in that respect, but that in his judgment they were not obliged to pay the tax; and he further testified as follows: " I advised them that they could go on making these payments, and when the time came that there was only so much due on the contract as would be sufficient to meet this paving tax then they could offset the paving tax with interest as a payment on the contract. They wanted to raise the question then. I said, ' No ; you have got to ask these people for releases. You cannot sell that land without you get releases ; and the minute you get into any row about this paving tax this question of releases will come up, and they will shut down on you about giving releases, and, therefore, I should advise you to go on and pay this as long as you can, and not have any row with these folks, and when the matter is finally determined why you can offset it, or claim it as a payment of so much money advanced on the contract under the lien and incumbrance clause in the contract.' "

It is difficult to resist the conclusion, from all the evidence in the case, that the defendants, up to the time of receiving this advice from their counsel, fully understood that they were obligated to pay the tax. If, as the defendants now claim, their statement of the account furnished Kahabka was incorrect, and the paving tax should have been credited to the defendants, both Kahabka and the plaintiff were misled by the statement furnished, and the plaintiff was induced to pay Kahabka for the contract the amount of the paving tax more than was actually due thereon.

In view of all the facts and circumstances of the case we are persuaded that it was the understanding and intention of the parties

when they made the contract that the land was sold subject to this tax, and that the defendants were obligated to pay it.

It follows that the judgment appealed from should be reversed and a new trial granted, with costs to abide the event.

DWIGHT, P. J., and BRADLEY, J., concurred.

HAIGHT, J. (dissenting):

This action was brought to foreclose a land contract. The defendants claim credit for the sum of $1,542.39 paid to the city of Buffalo, being the amount of taxes assessed against the premises contracted for, for the paving of Walden avenue. These taxes were duly levied and assessed on the 16th day of August, 1886, and then became a lien and an incumbrance thereon. Under the provisions of the charter then in force the tax could have been paid in five equal annual installments, but upon the failure for two months to pay any installment the whole assessment became due by operation of law, and thereafter drew interest at the rate of one per cent a month. The owner of the land had failed to pay the first installment, so that when the contract was executed the whole assessment in question was overdue and payable, and the land was liable to be sold therefor. The contract for the sale of the land was made on the 5th day of January, 1887, and the only question to be determined is as to whether this tax is to be paid by the vendor or the vendees.

The contract, after giving the names of the parties, " Witnesseth, that said party of the first part has agreed to sell and does hereby agree to sell unto said parties of the second part, their heirs and assigns, all that certain piece or parcel of land (particularly describing the same) for the sum of $21,252, which said parties of the second part hereby agree to pay as follows : Not less than $1,000 on or before the 10th day of January, 1887, and the balance in such weekly sums as shall be derived by said second parties from the sale of lots or parcels of said premises. Said second parties hereby agree to use their best endeavors to sell lots and parcels of said premises, and all sums received by them from such sales over and above necessary running expenses shall be paid weekly to the credit of said first party hereto, and said second parties hereby guarantee that such payment shall not be less than $300 every three months.

Of the quarterly payments specified in this contract at least 75 per cent shall be applied on the incumbrances now resting on said premises until the same are fully paid, and the treasurer of the purchasers is hereby authorized to pay said 75 per cent upon such incumbrances whenever said 75 per cent shall amount to the sum of $300 and upwards."

It appears that at the time of the executing of this contract the premises were incumbered by two mortgages, one for $12,000, and the other for $5,000, and the Walden avenue paving tax, $1,542.39. We thus have the covenant on the part of the vendor to sell for $21,252. We have a covenant on the part of the vendees to purchase the premises and pay therefor that sum, and no covenant nor agreement on their part appears in the contract to pay any other or greater sum. It appears that the defendants purchased the premises for the purpose of again selling it in small parcels or building lots, and that the payment of the purchase price was to be made out of the sales so made by the defendants, they guaranteeing, however, that the payments should not be less than $300 per quarter; but it is provided that seventy-five per cent of such payments shall be applied upon the incumbrances resting upon the premises and that such payments shall be made by the defendants' treasurer. The word "incumbrances" is used, and that word as ordinarily understood includes the taxes as well as the mortgages that were at that time a lien on the premises.

Again, the contract provides: "Said parties of the second part also agree to pay all taxes and assessments which shall be levied or assessed on said premises after the date hereof." Here we have an express provision that, as to the taxes thereafter to be levied or assessed, they are to be paid by the defendants, but nothing in reference to the taxes then a lien, thus leaving the inference that it was not intended to include the taxes theretofore levied.

Again, it is provided: "Said party of the first part hereby guarantees that all taxes and assessments heretofore levied or assessed are fully paid except the paving tax on Walden avenue." This clause was doubtless inserted for the protection of the defendants. They are apprised by it of the existence of the Walden avenue tax, and the vendor guarantees that all the other taxes are fully paid. So far, the provisions of the contract seem to be in harmony, and under the

well-settled rules of construction, giving to words their ordinary meaning, it would seem to be the intention of the parties to have the Walden avenue tax paid out of the proceeds of the sales of lots, as one of the incumbrances existing upon the premises.

We now approach the consideration of the troublesome provision. It is provided that whenever $5,000 should be paid upon the contract, the defendants, at their option, were entitled to have a deed given to them of the premises not theretofore conveyed, and that they should give back a mortgage for the amount of the purchase price unpaid, which mortgage " shall contain the same covenants and conditions as are contained in this contract," and then " said party of the first part, upon receiving payment at the time and in the manner above mentioned, shall, at his own proper cost, execute and deliver to said second parties, or to their assigns, a warranty deed of said premises for the portion thereof not theretofore deeded at the request of said second parties, free and clear of all liens and incumbrances except taxes and assessments levied or assessed thereon after this date, or incumbrances placed thereon by said second parties, except the aforesaid paving tax on Walden avenue." Under this provision the argument is made that a warranty deed free and clear of all liens and incumbrances was to be given, except the aforesaid paving tax on Walden avenue, from which the inference is drawn that it was the understanding that that tax was to be assumed and paid by the defendants, but such is not the reading of the provision. A warranty deed free and clear of all liens and incumbrances is to be given, " except taxes and assessments levied or assessed thereon after this date, or incumbrances placed thereon by said second parties, except the aforesaid paving tax on Walden avenue." Here we have two exceptions. Was it intended that both of the exceptions should be to the covenant contracted to be contained in the deed? If so, they should have been connected with the copulative conjunction *and*, but the clauses are not so connected. Grammatically construed the latter exception would be to the exception that precedes it. But the court has the power to supply words and phrases if necessary to give effect to the intention of the parties. Should the necessary word be supplied in this case so as to make both exceptions relate to the covenant? This intention must be determined from all of the provisions of the contract. As we have seen, upon the payment of

$5,000 of the purchase price, the defendants, at their option, were entitled to demand a deed. True, here is a provision that the deed should be a warranty deed, free and clear of all liens, and yet, evidently, it was not the intention of the parties that all the liens should then be discharged, for the payment of $5,000 of the purchase price would not discharge the mortgages. The premises would still be incumbered for a large sum, and it evidently was not intended that the vendor should pay and discharge these mortgages in order to execute a deed. As we have seen, under the provisions of the contract, the incumbrances were to be paid by the treasurer of the defendants, and for that purpose he was authorized to take seventy-five per cent of the proceeds of the sales and to devote it to that purpose, and after the payment of the $5,000 part of the purchase money, and the delivery of the deed provided for, the purchasers were to give back a mortgage upon the premises, which mortgage " shall contain the same covenants and conditions as are contained in this contract "— in other words, providing that seventy-five per cent of the money to be paid upon the mortgage shall be devoted to the payment of the incumbrances upon the premises. We think, therefore, that the contract was properly construed by the trial court, and that that court properly disposed of the other questions raised in the case.

The judgment should be affirmed, with costs.

Interlocutory judgment appealed from reversed and new trial granted, costs to abide the final award of costs.